1  PAUL J. CAMBRIA, JR., ESQ. (State Bar No. 177957)
2  JONATHAN W. BROWN, ESQ. (State Bar No. 223901)
   LIPSITZ GREEN SCIME CAMBRIA LLP
3  42 Delaware Avenue, Suite 120
   Buffalo, New York 14202-3924
4  (716) 849-1333
   Facsimile No.: (716) 849-1315
5  pcambria@lglaw.com
   jbrown@lglaw.com
6
   MARK S. HOFFMAN, ESQ. (State Bar No. 108400)
7  RICHARD W. LABOWE, ESQ. (State Bar No. 105905)
   LABOWE, LABOWE & HOFFMAN, LLP
8  1631 West Beverly Boulevard, Second Floor
   Los Angeles, California 90026-5746
9  (213) 250-9800
   Facsimile No: (213) 975-1145
10 mshllh@aol.com
   llhlaw1631@aol.com

11 Attorneys for Plaintiffs LFP IP, LLC, LFP Publishing Group, LLC and Larry Flynt

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

| 14 | LFP IP, LLC; LFP PUBLISHING GROUP, LLC; and LARRY C. FLYNT, | ) ) ) | Case No. **SACV10-01546-DOC (MLGx)** |
|---|---|---|---|

14  LFP IP, LLC; LFP PUBLISHING    )  Case No. **SACV10-01546-DOC** (MLGx)
15  GROUP, LLC; and LARRY C.       )
16  FLYNT,                          )  **COMPLAINT FOR:**
                                    )
17              Plaintiffs,         )  **1. FEDERAL TRADEMARK
                                    )  INFRINGEMENT OF
18  vs.                             )  REGISTERED TRADEMARK**
                                    )
19                                  )  **2. FEDERAL TRADEMARK
20  MIDWAY VENTURE, LLC;            )  INFRINGMENT OF
    ABNER PAJOUNIA; EDMOND          )  UNREGISTERED
21  ADAIMY; PETER Z. BALOV;         )  TRADEMARK**
    STEVEN S. BITTER; and           )
22  DOES 1 through 10 inclusive,    )  **3. FALSE ENDORSEMENT
                                    )  UNDER THE LANHAM ACT**
23                                  )
                                    )  **4. FEDERAL TRADEMARK
24              Defendants.         )  DILUTION**
                                    )
25                                  )  **5. CALIFORNIA COMMON
                                    )  LAW UNFAIR COMPETITION**
26                                  )
                                    )  **6. VIOLATION OF
27                                  )  CALIFORNIA CIVIL CODE
                                    )  §3344**
28                                  )
                                    )  **7. WRONGFUL
                                    )  APPROPRIATION OF NAME**

1

Plaintiffs LFP IP LLC, LFP PUBLISHING GROUP, LLC and LARRY FLYNT by and through their attorneys, herein allege:

## NATURE OF THE ACTION

1.      This is an action for preliminary and permanent injunctive relief and damages arising from Defendants' infringement of the federal and California state statutory and common law rights of: (1) the registered trademarks HUSTLER and HUSTLER CLUB held by LFP IP LLC, as successor in interest to the rights of LFP PUBLISHING GROUP, LLC in said marks; and (2) Plaintiff LARRY C. FLYNT and his famous LARRY FLYNT name and common law trademark. Upon information and belief, the individual Defendants, ABNER PAJOUNIA, EDMOND ADAIMY, PETER Z. BALOV, and STEVEN S. BITTER, together with Defendant MIDWAY VENTURE, LLC, operate an adult-oriented entertainment night club located at 3310, 3314, 3334 and 3336 Midway Drive, San Diego, California 92110, as a *Larry Flynt's Hustler Club* and are thereby intentionally and willfully infringing and trading off of the famous marks HUSTLER, HUSTLER CLUB and LARRY FLYNT.

## JURISDICTION AND VENUE

2.      This is a civil action seeking injunctive relief and damages for federal trademark infringement/false endorsement, federal trademark dilution, and federal statutory unfair competition under the Lanham Act, 15 U.S.C. and § 1051, *et seq.*

(the "Lanham Act"), and specifically 15 U.S.C. § 1114 and § 1125, and California state common law unfair competition and statutory right of publicity.

3.    This Court has subject matter jurisdiction of this action over the federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 1338(a) and (b), and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

4.    This Court has personal jurisdiction over the corporate Defendant MIDWAY VENTURE, LLC, which is a California limited liability corporation, with a principal business address of 5716 Corsa Avenue, Suite 110, Westlake Village, California 91362.

5.    Upon information and belief, this Court has jurisdiction of the individual Defendants, ABNER PAJOUNIA, EDMOND ADAIMY, PETER Z. BALOV, and STEVEN S. BITTER as they are residents of the State of California, are doing business within the State of California, and have transacted business in this State giving rise to the action commenced herein.

6.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c), in that Defendant MIDWAY VENTURE, LLC has an office and place of business in this district.

3

## PARTIES

7.   At all times herein relevant, Plaintiff LFP IP, LLC was and is a Delaware limited liability company, authorized to do business in the State of California, with an office and place of business at 8484 Wilshire Boulevard, Beverly Hills, California 90210

8.   At all times herein relevant, Plaintiff LFP PUBLISHING GROUP, LLC was and is a Delaware limited liability company, authorized to do business in the State of California, with an office and place of business at 8484 Wilshire Boulevard, Beverly Hills, California 90210.

9.   At all times herein relevant, Plaintiff LARRY C. FLYNT ("Flynt") was and is an individual residing and doing business in this district, with a principal office and place of business at 8484 Wilshire Boulevard, Beverly Hills, California 90210.

10.   Upon information and belief, Defendant MIDWAY VENTURE, LLC ("Midway") was and is a California limited liability company, with a principal business address located at 5716 Corsa Avenue, Suite 110, Westlake Village, California 91362.

11.   Upon information and belief, Defendant ABNER PAJOUNIA ("Pajounia") is an individual and principal of Defendant Midway, with an office

4

and place of business located at 5716 Corsa Avenue, Suite 110, Westlake Village, California 91362.

12.   Upon information and belief, Defendant EDMOND ADAIMY ("Adaimy") is an individual and principal of Defendant Midway, with an office and place of business located at 5716 Corsa Avenue, Suite 110, Westlake Village, California 91362.

13.   Upon information and belief, Defendant PETER Z. BALOV ("Balov") is an individual and principal of Defendant Midway, with an office and place of business located at 5716 Corsa Avenue, Suite 110, Westlake Village, California 91362.

14.   Upon information and belief, Defendant STEVEN S. BITTER ("Bitter") is an individual and principal of Defendant Midway, with an office and place of business located at 5716 Corsa Avenue, Suite 110, Westlake Village, California 91362.

15.   The true names and capacities, whether individual, corporate, affiliate, or otherwise, of Defendants Does 1-10, inclusive, are presently unknown to Plaintiffs and for that reason, those Defendants are sued by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the Doe Defendants is in some way responsible for the damages herein alleged.  Plaintiffs

will amend this Complaint when the true names and capacities of the Doe Defendants become known to him.

16.   Upon information and belief, each of the Defendants, including the fictitiously named Doe Defendants, was and is the agent and representative of the other Defendants, acting within the purpose and scope of said agency and representation.  Plaintiffs are further informed and believe that each of the Defendants, including the fictitiously named Doe Defendants, authorized and ratified the conduct therein alleged of each of the other Defendants.

## FACTS COMMON TO ALL CAUSES OF ACTION

## THE REGISTERED TRADEMARKS

17.   The trademark HUSTLER was registered with the United States Patent and Trademark Office for use in connection with adult night clubs on December 5, 2000 (Registration No. 2410985).

18.   The trademark HUSTLER CLUB was registered with the United States Patent and Trademark Office for use in connection with adult night clubs on October 14, 2003 (Registration No. 2773372).

19.   Both of the marks identified in paragraphs 17 and 18 above are incontestable.  Affidavits have been filed pursuant to sections 8 and 15 of the Lanham Act, 15 U.S.C. § § 1058 and 1065 for both of the subject registered trademarks.

20.    By assignment, the HUSTLER and HUSTLER CLUB trademarks are currently registered to LFP IP LLC ("LFP IP"), a company controlled exclusively by Plaintiff Flynt.

21.    Plaintiff LFP PUBLISHING GROUP, LLC ("LFP Publishing") is a licensee of Plaintiff LFP IP for use of the trademarks HUSTLER and HUSTLER CLUB in connection with adult night clubs.

22.    Plaintiff LFP Publishing is a licensee of Plaintiff Flynt for the common law mark LARRY FLYNT in connection with its use with the registered marks HUSTLER and HUSTLER CLUB.

## THE FLYNT COMMON LAW MARK

23.    Since the early 1970's, through his various "LFP" (originally Larry Flynt Publications) companies, Plaintiff Flynt has used the LARRY FLYNT name and common law mark in connection with various goods and services including (i) sexually explicit adult magazines and other similar publications; (ii) production and distribution of numerous sexually explicit motion pictures; (iii) Internet websites; (iv) adult novelty stores; and (v) nightclubs.

24.    In addition, Plaintiff Flynt was the principal subject of a well-known 1996 Columbia Pictures feature motion picture entitled "The People vs. Larry Flynt," by internationally acclaimed director Milos Forman, depicting Plaintiff as

7

heroically championing the rights of free expression under the First Amendment to the United States Constitution.

25.   Plaintiff Flynt's LARRY FLYNT name and common law mark has become famous, has acquired secondary meaning to the public, and he is entitled to protect the trademark rights associated with the LARRY FLYNT trademark.

**THE SAN DIEGO CLUB LICENSE**

26.   In or about April 2006, Plaintiff LFP Publishing (which at the time was the registrant of the HUSTLER and HUSTLER CLUB trademarks) entered into a written license agreement with non-party PACERS, INC. ("Pacers") (the "License Agreement"), allowing for the use of the HUSTLER trademark in connection with the operation of an adult night club located at 3334-3336 Midway Drive, San Diego, California (the "San Diego Club").  A copy of said license agreement is attached hereto labeled **Exhibit A** and incorporated herein by reference as though fully set forth at length.

27.   In connection therewith, and in addition to the HUSTLER trademark, Plaintiffs allowed non-party Pacers to utilize the LARRY FLYNT and HUSTLER CLUB marks in operating the San Diego Club (the LARRY FLYNT, HUSTLER and HUSTLER CLUB marks shall be collectively referred to herein as the "Hustler Marks").  The San Diego was therefore formally known, operated and marketed as *Larry Flynt's Hustler Club*, and is one of numerous such clubs

8

operated through entities that are owned or controlled by one or more of the principals of Pacers across the United States; each separate entity having entered into license agreements with Plaintiffs or affiliates of Plaintiffs for that right.

28.    On or about August 27, 2009, non-party Pacers filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court, Southern District of California, *In re Pacers, Inc.*, Case No. 09-12738-LA11 (the "Pacers Bankruptcy").

29.    At the time the Pacers Bankruptcy was commenced, Plaintiff LFP Publishing was owed the sum of $43,402.35 in unpaid royalties under the terms and conditions of the License Agreement.  Attached hereto labeled **Exhibit B** is a true and correct copy of the Proof of Claim filed by LFP Publishing on January 6, 2010 in the Pacers Bankruptcy.

30.    Plaintiff LFP Publishing is a listed creditor in the Pacers Bankruptcy and remains an unsatisfied creditor therein for unpaid pre-petition royalties.

31.    On or about March 19, 2010, Leslie T. Gladstone was appointed the Trustee in the Pacers Bankruptcy (the "Trustee").

32.    At no time has the Trustee ever sought or obtained Bankruptcy Court approval to assume the License Agreement on behalf of Pacers.

33.    On or about April 29, 2010, the Trustee filed a motion seeking Bankruptcy Court approval for the sale of Pacers business assets pursuant to a

certain written Agreement for Purchase and Sale of Certain Assets dated April 28, 2010 (the "Purchase Agreement").

34.   By Order dated June 8, 2010, the Bankruptcy Court approved the sale of Pacer's business assets pursuant to the Purchase Agreement.   A copy of the June 8, 2010 Order, together with a copy of the Purchase Agreement is attached hereto labeled **Exhibit C**, and incorporated herein by reference as though fully set forth at length.

35.   Each of the individual Defendants is a signatory to the Purchase Agreement.

36.   The Purchase Agreement specifically excludes the sale of any right to Defendants for the continued use of the Hustler Marks in connection with the operation of the San Diego Club.

37.   Recital D of the Purchase Agreement provides:

Seller is informed and believes that, from time to time, the Business has used and/or ay currently continue to: (1) use certain business names, trademarks and/or promotional materials; (2) market and/or sell certain branded merchandise; (3) participate in various sponsored and/or licensed events and/or national products/service plans; and or conduct business using other licensed names, materials,

products and/or services under various licensing and/or consulting agreements, including but not limited to such agreements with LFP Publication Group, LLP [sic], Déjà Vu Consulting, Inc., and others (collectively the "IP Licenses"). Notwithstanding any such past, or present uses of and/or business attributes arising out of such IP Licenses, Seller does not believe that Seller's rights under the IP Licenses will necessarily be assignable or otherwise transferable without the consent of the respective licensors. Without limiting any other provision of this Agreement, Buyer acknowledges and agrees that Buyer will not receive any rights or interests respecting such IP Licenses from Seller pursuant to this Agreement; and Buyer agrees that, from and after Closing as provided herein, Buyer will remove all licensed materials and products from the Premises and cease using the same, unless Buyer has first obtained such rights or interests pursuant to Buyer's separate agreement(s) with such licensors. (Emphasis added).

38.    The License Agreement between Pacers and LFP Publishing is included in the definition of IP Licenses in the Purchase Agreement, and is specifically excluded from the assets sold pursuant thereto.

39.    Additionally, Section 1.1(D) of the Agreement, which lists the assets of Pacers that Defendants did purchase, specifically excludes any license to the Marks.  Section 1.1(D) specifically provides: "Notwithstanding anything to the contrary, Seller will not convey to Buyer any interest in the IP Licenses".

40.    Pursuant to Recital D of the Purchase Agreement, Defendants agreed that unless and until they received permission to utilize the Hustler Marks, they would "remove all licensed materials and products from the Premises and cease using same."

41.    The Court Order approving the sale of Pacers' business assets to Defendants was expressly conditioned on the terms and conditions of the Purchase Agreement.

42.    The closing on Defendants' purchase of the business assets of Pacers occurred on September 20, 2010, thereby giving them possession of the San Diego Club location.

43.    Defendants, in contravention of the rights of Plaintiffs, and the express terms and conditions of the Purchase Agreement, continue to operate the San

Diego Club as a *Larry Flynt's Hustler Club*, and have otherwise failed and refused to remove the Hustler Marks from the San Diego Club, inclusive of all signage.

44.    By letter dated September 22, 2010, Defendants were placed on notice of Plaintiffs demand that they immediately cease and desist the use of the Hustler Marks in operation of the San Diego Club.  A copy of said letter, written by counsel for Plaintiffs, is attached hereto labeled **Exhibit D** and is incorporated herein by reference as though fully set forth at length.

45.    By letter dated October 11, 2010, Defendants were further advised by Plaintiffs that they did not consent nor approve any purported assignment of the License Agreement to Defendant Midway.   A copy of said October 11, 2010 letter is attached hereto labeled **Exhibit E**, and is incorporated herein by reference as though fully set forth at length.

46.    The continued operation of the San Diego Club as a *Larry Flynt's Hustler Club, Hustler Club* or any confusingly similar variation thereof is a willful and deliberate infringement of the rights of Plaintiffs in and to the Hustler Marks, and is specifically intended by Defendants to trade-off the goodwill, fame and secondary meaning associated with the Hustler Marks, and the chain of night clubs bearing the Hustler marks and/or the name *Larry Flynt's Hustler Club.*

47.    Unless Defendants are preliminarily and permanently enjoined by this Court, Plaintiffs will suffer irreparable injury and lost goodwill associated with Hustler Marks.

**COUNT I**

**INFRINGEMENT OF REGISTERED TRADEMARK**

**(15 U.S.C. § 1114)**

48.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49.    Plaintiff LFP IP, LLC is the owner of various HUSTLER federal trademark registrations, specifically including HUSTLER (Registration No. 2410985) and HUSTLER CLUB (Registration No. 2773372) used in connection with night clubs and night club services.  Affidavits have been filed pursuant to sections 8 and 15 of the Lanham Act, 15 U.S.C. § § 1058 and 1065 for both of the subject registered trademarks.  Accordingly, these marks are incontestable.

50.    By reason of the foregoing, Defendants' use of *Hustler Club*, *Larry Flynt's Hustler Club* or any confusingly similar variation thereof is likely to cause consumer confusion as to the source of Defendants' night club, or the sponsorship or affiliation between Defendants' night club and those actually licensed, sponsored or affiliated with Plaintiffs.

14

51.    Defendants' use of *Hustler Club*, *Larry Flynt's Hustler Club* or any confusingly similar variation thereof, infringes the federal trademark rights of Plaintiff LFP IP, LLC.  Upon information and belief, Defendants are deliberately, intentionally and willfully infringing Plaintiff's HUSTLER and/or HUSTLER CLUB trademarks, and the goodwill associated by the public with the subject names and marks, and falsely making it appear to consumers that Plaintiff is endorsing, sponsoring, or are otherwise affiliated with Defendants.

52.    Upon information and belief, if not preliminarily and permanently enjoined by this Court, Defendants will continue to operate and market the San Diego Club as a *Larry Flynt's Hustler Club, Hustler Club* or a confusingly similar variation thereof in violation of Plaintiffs' rights under the Lanham Act, 15 U.S.C. § 1114.

53.    Plaintiffs also seek monetary damages and attorneys' fees for Defendants' willful use and advertising of the Hustler Mark, inclusive of a disgorgement of all revenues earned by them since acquiring the San Diego Club and operating it as a *Larry Flynt's Hustler Club, Hustler Club* or a confusingly similar variation thereof.

54.    Plaintiffs have no adequate remedy at law.

15

# COUNT II

## INFRINGEMENT OF UNREGISTERED TRADEMARK

### (15 U.S.C. § 1125(a))

55.   Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56.   Plaintiffs' LARRY FLYNT trademark is widely recognized by the general consuming public of the United States as designating the source of various goods and services originating with Plaintiff Flynt and his companies.

57.   Plaintiffs' LARRY FLYNT mark has become famous and has acquired secondary meaning to the consuming public.

58.   By intentionally operating the San Diego Club as a *Larry Flynt's Hustler Club* the Defendants are intentionally and willfully infringing upon Plaintiffs' LARRY FLYNT trademark and the goodwill associated with it.

59.   By intentionally operating and marketing the San Diego Club as a *Larry Flynt's Hustler Club* to the general public, Defendants are falsely making it appear that Plaintiffs are endorsing, sponsoring, or are otherwise affiliated with Defendants.

60.   Upon information and belief, if not preliminarily and permanently enjoined by this Court, Defendants will continue to operate and market the San

Diego Club as a *Larry Flynt's Hustler Club* in violation of Plaintiffs' rights under the Lanham Act, 15 U.S.C. § 1125(a).

61.    Plaintiffs also seek monetary damages and attorneys' fees for Defendants' willful use and advertising of the LARRY FLYNT mark, inclusive of a disgorgement of all revenues earned by them since acquiring the San Diego Club and operating it as a *Larry Flynt's Hustler Club*.

62.    The foregoing conduct of Defendants further constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

63.    Plaintiffs have no adequate remedy at law.

**COUNT III**

**FALSE ENDORSEMENT - FEDERAL UNFAIR COMPETITION**

(15 U.S.C. § 1125(a))

64.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65.    The Plaintiffs' Hustler Marks are widely recognized by the general consuming public of the United States as a designation of the source of goods and services sold utilizing said marks by Plaintiffs or their authorized licensees.

66.    Defendants have operated and marketed the San Diego Club by unlawfully utilizing the Hustler Marks without Plaintiffs' permission; with the intent to create an association and affiliation between Defendants and Plaintiffs;

17

and to trade-off on the fame and notoriety of Plaintiff Flynt by usurping the goodwill of the Hustler Marks.

67.   The continued use by Defendants of Hustler Marks will result in deception and confusion of the public as to the endorsement of the San Diego Club by Plaintiffs, and constitutes unfair competition and violation of the federal Lanham Act, 15 U.S.C. § 1125(a), and violation of the Plaintiffs' exclusive rights to exploit said famous Hustler Marks.  The foregoing conduct of Defendants further constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

68.   Upon information and belief, unless preliminarily and permanently enjoined by this Court, Defendants will continue to unlawfully advertise and exploit the Hustler Marks, causing Plaintiffs irreparable damage and injury.

69.   Plaintiffs have no adequate remedy at law

## COUNT IV

## TRADEMARK DILUTION

### (15 U.S.C. § 1125 (c))

70.   Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 69 of this Complaint as if fully set forth herein.

71.   By deliberately, intentionally and willfully displaying the Hustler Marks in the operation and marketing of the San Diego Club, Defendants have

18

caused dilution of the Hustler Marks through blurring and tarnishment, in violation of 15 U.S.C. § 1125(c).

72.   By reason of the foregoing, Defendants have deliberately, willfully and knowingly diluted the rights of Plaintiffs in and to the Hustler Marks, in order to intentionally deceive and mislead consumers and the public at large, and to willfully usurp the goodwill and reputation associated with the Hustler Marks.

73.   Unless preliminarily and permanently enjoined by this Court, Defendants will continue to dilute, and to cause serious and irreparable harm and damage to the reputation and goodwill associated with Plaintiffs and the Hustler Marks.

74.   Plaintiffs have no adequate remedy at law.

## COUNT V

## COMMON LAW TRADEMARK INFRINGEMENT / UNFAIR COMPETITION

(California Common Law)

75.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 74 of this Complaint as if fully set forth herein.

76.   This cause of action under California state common law is separate and independent of the federally-based causes of action previously set forth herein, but it is between the same parties and is based on the same operative facts as set forth

in the prior causes of action; this Court accordingly has supplemental jurisdiction over said claim pursuant to 28 U.S.C. § 1367(a).

77.   As set forth above, Plaintiff Flynt resides and does business in the State of California, where he owns and enjoys common law trademark rights throughout the United States in the LARRY FLYNT name and common law mark for adult entertainment.  Plaintiff LFP Publishing, with the permission and authorization of Plaintiff Flynt, licensed the LARRY FLYNT name to Pacers for use in connection with Pacers' operation of a *Larry Flynt's Hustler Club* in San Diego California.

78.   The use of the LARRY FLYNT name and common law mark by Defendants in connection with the operation and marketing of the San Diego Club in the State of California is likely to cause, and has caused, confusion among consumers as to the source of the entertainment services provided at the San Diego Club, with patrons thereof likely associating the San Diego Club as one owned, operated or controlled by Plaintiffs, all to Plaintiffs' detriment.

79.   Upon information and belief, unless preliminarily and permanently enjoined by this Court, Defendants will continue their aforesaid willful and deliberate infringement of Plaintiff Flynt's name and common law mark.

80.   Plaintiff has no adequate remedy at law.

# COUNT VI

## VIOLATION OF CALIFORNIA CIVIL CODE §3344

### (California Statutory Law)

81.  Plaintiff Flynt incorporates by reference the allegations contained in paragraphs 1 through 80 of this Complaint as if fully set forth herein.

82.  Defendants have appropriated Plaintiff Flynt's famous LARRY FLYNT name in connection with the operation and marketing of the San Diego Club, and have knowingly used LARRY FLYNT's name for a commercial purpose.

83.  Defendants do not have Plaintiff Flynt's consent to use the name LARRY FLYNT in connection with the operation and marketing of the San Diego Club.

84.  Defendants' use of the LARRY FLYNT name did not occur in connection with a news, public affairs, or sports broadcast or account, or with a political campaign.

85.  As a result of Defendants conduct described above, Plaintiff Flynt was harmed.

86.  By reason of the foregoing, Defendants are liable to Plaintiff Flynt for his actual damages sustained, and any profits realized by Defendants, as well as punitive damages.

## COUNT VII

## WRONGFUL APPROPRIATION OF NAME

(California Common Law)

87.   Plaintiff Flynt incorporates by reference the allegations contained in paragraphs 1 through 86 of this Complaint as if fully set forth herein.

88.   Defendants have appropriated Plaintiff Flynt's famous LARRY FLYNT name in connection with the operation and marketing of the San Diego Club.

89.   Defendants do not have Plaintiff Flynt's consent to use the name LARRY FLYNT in connection with the operation and marketing of the San Diego Club.

90.   By reason of the foregoing, Defendants are liable to Plaintiff Flynt for his actual damages sustained, and any profits realized by Defendants, as well as punitive damages.

WHEREFORE, Plaintiffs LFP IP LLC, LFP Publishing Group, LLC and Larry C. Flynt, demand judgment against Defendants as follows:

(1) Restraining and enjoining Defendants, together with Defendants' officers, agents, employees, successors and assigns, and all those in privity and/or acting in concert with them, permanently and preliminarily during the pendency of

this action, from operating, marketing and/or otherwise utilizing the Hustler Marks, or any confusingly similar name or mark in the operation of any night club, bar or restaurant without Plaintiffs' permission;

(2) Awarding Plaintiffs their monetary damages, including their actual damages sustained as a result of the Defendants' infringement of Plaintiffs' Hustler Marks and other unlawful conduct set forth herein, together with an accounting of Defendants' profits, as provided in 15 U.S.C. § 1117, California common law, and California's Civil Code § 3344, all in amounts to be determined at trial;

(3) Directing Defendants to surrender for destruction all bar ware, signage, promotional material, inclusive of all goods, labels, advertising material and other items containing or including the Hustler Marks;

(4) Awarding Plaintiffs punitive damages against Defendants for their willful misconduct in an amount to be determined at trial;

(5) Awarding Plaintiffs their costs and reasonable attorneys' fees and expert witness fees in this action; and

1        (6) Granting Plaintiffs such other and further relief as the Court may deem

2

3    just and equitable.

4

5    Dated:   October 12, 2010

6

7                                /s/ Jonathan W. Brown

8                                Paul J. Cambria, Jr. Esq.

9                                Jonathan W. Brown, Esq.

10                      LIPSITZ GREEN SCIME CAMBRIA LLP

11                      42 Delaware Avenue, Suite 120

12                      Buffalo, New York 14202-3924

13                      (716) 849-1333

14                               Mark S. Hoffman, Esq.

15                             Richard W. Labowe, Esq.

16                      LABOWE, LABOWE & HOFFMAN, LLP

17                      1631 West Beverly Boulevard

18                      Second Floor

19                      Los Angeles, California 90026-5746

20                      (213) 250-9800

21                      Attorneys for Plaintiffs LFP IP LLC

22                      LFP Video Group, LLC, and Larry Flynt

23

24

25

26

27

28

## REQUEST FOR JURY TRIAL

Plaintiffs hereby demand a jury trial of all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:  October 12, 2010

/s/ Jonathan W. Brown

_____

Jonathan W. Brown, Esq.
Paul J. Cambria, Jr.
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3924
(716) 849-1333

Mark S. Hoffman, Esq.
Richard W. Labowe, Esq.
LABOWE, LABOWE & HOFFMAN, LLP
1631 West Beverly Boulevard
Second Floor
Los Angeles, California 90026-5746
(213) 250-980

Attorneys for Plaintiffs Larry C. Flynt,
LFP Video Group, Inc., and LFP IP LLC

# EXHIBIT A

06/22/2006  15:08 FAX  2483540896                                    ☒002/013

# LICENSE AGREEMENT

THIS AGREEMENT is entered into as of April __, 2006, by and between LFP PUBLISHING GROUP, LLC, a Delaware limited liability company, having its principal office at 8484 Wilshire Blvd., Suite 900, Beverly Hills, California 90211 ("LICENSOR"), and PACERS, INC., a California corporation, with offices at c/o Modern Bookkeeping, Inc., 8252 E. Lansing Road, Suite 101, Durand, Michigan 48429 ("LICENSEE").

A.    LICENSOR is the sole and exclusive owner of the trademark "Hustler" (the "Trademark");

B.    LICENSOR has the power and authority to grant to LICENSEE the right, privilege and license to use the Trademark in connection with the entertainment club more specifically described in Schedule A attached hereto (the "Club");

C.    LICENSEE has represented that LICENSEE has the financial resources, ability and experience to design, build and operate the Club;

D.    LICENSEE desires to obtain from LICENSOR a license to use the Trademark on or in association with the Club at the premises (the "Premises") as set forth in Schedule A; and

E.    LICENSEE and LICENSOR are in agreement, as set forth herein, with respect to the terms and conditions upon which LICENSEE shall use the Trademark in connection with the Club.

NOW, THEREFORE, in consideration of the promises and agreements set forth herein, the parties agree as follows:

1.    **Grant of License.**

1.1    LICENSOR hereby grants to LICENSEE a license to use the Trademark on and in connection with the Club at the Premises, as well as on promotional and advertising material associated therewith (the "License").

1.2    LICENSOR also grants to LICENSEE the right to sell "Hustler" merchandise at the Club location.   LICENSEE shall not have the right to manufacture "Hustler" merchandise. LICENSEE shall purchase "Hustler" merchandise sold at the Premises from LICENSOR.

1.3    LICENSEE shall not make or authorize any use, direct or indirect, of the Trademark in any manner not specifically authorized by this Agreement.

2.    **Term.** The term of this Agreement shall be as set forth in Schedule A (the "Term").

06/22/2006  15:08 FAX  2483540896                                    ☒ 003/013

3.     Compensation/Royalties.

3.1     In consideration for the License granted hereunder, LICENSEE shall pay to LICENSOR, during the Term, 10% of Gross Revenues (as hereinafter defined) derived from the Club in excess of the Threshold Amount (as hereinafter defined) as set forth in Schedule A (the "Royalty"). "Threshold Amount" shall mean $45,000 per week. The minimum Royalty to be paid by LICENSEE to LICENSOR for a full calendar year is the sum of $30,000 ("Minimum Annual Royalty").

3.2     The Royalties payable to LICENSOR shall be calculated on a calendar year basis (the "Royalty Period") and shall be payable no later than thirty (30) days after the end of the preceding calendar quarter, i.e., by the thirtieth (30th) day of January, April, July and October. If any Royalty Period is less than a full calendar year, then the Minimum Annual Royalty shall be an amount equal to the sum of $30,000 times a fraction, the numerator of which is the number of calendar days in the Royalty Period and the denominator of which is 365 (or 366 in a leap year).

3.3     With each Royalty payment, LICENSEE shall provide LICENSOR with a complete and accurate royalty statement in a form reasonably acceptable to LICENSOR (the "Royalty Statement"). Each Royalty Statement shall be certified as accurate by a duly authorized representative of LICENSEE, and shall include gross sales by category, e.g., food, beverage, cover charges, and merchandise.

3.4     "Gross Revenues" shall mean LICENSEE's gross revenues from the operation of the Club, including, without limitation, all revenue from cover charges, entertainment charges and the sale of food, beverages and merchandise in the Club. No costs incurred in the operation of the Club or in the manufacturing, selling and advertising of the merchandise shall be deducted from Gross Revenues. "Gross Revenues" as used herein shall exclude (a) any amounts collected by LICENSEE or LICENSEE's agents, employees, independent contractors, or subtenants as sales or excise tax or any other tax or imposition upon receipts (not net income) which is imposed by and paid to any governmental or regulatory agency or authority, including, but not limited to, any tax imposed upon rent, use, admissions, or other receipts by LICENSEE or LICENSEE's agents, employees, independent contractors, or subtenants, (b) the amount of any cash or credit refund made upon any sale where the merchandise is sold, and is thereafter returned by the purchaser and accepted by LICENSEE or LICENSEE's agent, (c) the exchange of merchandise or the sale of merchandise between LICENSEE and Affiliates of LICENSEE or between Affiliates of LICENSEE where such exchange or sale of merchandise is made solely for the convenient operation of the business of LICENSEE or Affiliates of LICENSEE and not for the purpose of consummating a sale which has the purpose of depriving LICENSOR of the benefit of a sale which would otherwise be included in Gross Revenues, (d) all tips, gratuities, and other payments paid to LICENSEE's agents or employees or entertainers (whether classified as employees, independent contractors, subtenants, or otherwise) and all tips, gratuities, and other payments paid to or collected by LICENSEE for LICENSEE's agents or employees or entertainers (whether classified as employees, independent contractors, subtenants, or otherwise), and (e) all Incentives. As used in this Agreement, "Incentives" shall mean all subsidies from suppliers or

2

06/22/2006  15:08 FAX  2483540896                                                    ☑ 004/013

manufacturers or wholesalers, all incentives from suppliers or manufacturers or wholesalers, all loans and other payments from suppliers or manufacturers or wholesalers, whether or not LICENSEE is required to repay the loans or other payments from suppliers or manufacturers or wholesalers, all amounts paid by suppliers or manufacturers or wholesalers to promote the purchase or sale of specific supplies or merchandise or for advertising purposes, and all amounts paid by suppliers or manufacturers or wholesalers for advance discounts or credits against future purchases from suppliers or manufacturers or wholesalers.  As used in this Agreement, "Affiliates" of LICENSEE shall mean any person or entity which, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, LICENSEE or is an officer, director, member, manager, stockholder, or a partner of any such entity.  As used in the definition of Affiliate of LICENSEE, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person or party, whether through the ownership of an equity interest, by contract, or otherwise. All amounts paid by suppliers or manufacturers or wholesalers for advance discounts or credits against future purchases from suppliers or manufacturers or wholesalers shall not be deducted to determine the Threshold Amount after the first calendar year of the Term.

3.5    A Royalty obligation shall accrue upon the receipt of Gross Revenues by LICENSEE, subject to the remaining provisions of this Agreement.

3.6    The receipt or acceptance of LICENSOR of any Royalty Statement, or the receipt or acceptance of any Royalty payment, shall not prevent LICENSOR from subsequently challenging the validity or accuracy of such statement or payment.

3.7    All payments due hereunder shall be made in United States funds and shall be drawn on a United States bank, unless otherwise agreed to by the parties.

3.8    Any amount due and payable under this Agreement which is not paid within thirty (30) days after the date upon which it is due shall accrue interest at the rate of ten percent (10%) per annum from the due date until the date of payment.

3.9    If the lesser of (a) 10% of the Gross Revenues in excess of the Threshold Amount, and (b) the Minimum Annual Royalty for the portion of the Royalty Period, for any Royalty Period are less than the quarterly payments made by LICENSEE to LICENSOR for such Royalty Period, then LICENSOR shall pay the amount of any overpayment to LICENSEE within forty-five (45) days after the end of such Royalty Period.  If 10% of the Gross Revenues in excess of the Threshold Amount are more than the quarterly payments made by LICENSEE to LICENSOR for such Royalty Period, then LICENSEE shall pay the amount of any deficiency to LICENSOR within forty-five (45) days after the end of such Royalty Period.

4.    Books and Records/Audit Rights.

4.1    LICENSEE agrees to keep accurate books of account and records covering all transactions relating to the License.  LICENSOR shall have the right, upon fifteen (15)

3

06/22/2008 15:09 FAX  2483540806                                           ☑ 005/013

days written notice and no more than once in a calendar year and during normal business hours, to inspect LICENSEE's books and records at the place or places where such records are normally retained by LICENSEE. LICENSOR shall have free and full access thereto for such purposes. LICENSOR shall be permitted to make copies thereof and extracts therefrom.

4.2   If such inspection reveals a discrepancy in the amount of Royalties owed LICENSOR from what was actually paid, LICENSEE shall promptly pay such discrepancy, plus interest, calculated at the rate of ten percent (10%) per annum. In the event that such discrepancy is in excess of ten percent (10%) of the Royalty amount reported, LICENSEE shall also reimburse LICENSOR for the reasonable cost of such inspection.

4.3   All books and records for each Royalty Period relating to the License shall be maintained and be kept available for at least three (3) years after the expiration of the Royalty Period and LICENSEE agrees to permit reasonable access for inspection thereof by LICENSOR during such three (3) year period upon reasonable notice to LICENSEE during normal business hours.

5.   Representations and Warranties.

5.1   LICENSOR represents and warrants that: (i) it has the right, power and authority to grant the License granted herein and that it is not a party to any other agreement which is in conflict herewith; (ii) LICENSOR has the unrestricted right to use the Trademark; (iii) the Trademark does not infringe on any other trademark or tradename or any other valid right of any third party; and (iv) LICENSOR has not been notified or advised of any claim that the Trademark infringes on the rights of any other person or party.

5.2   LICENSEE represents and warrants that: (i) it has the right, power and authority to enter into this Agreement and that it is not a party to any other agreement which is in conflict herewith; (ii) it will use all reasonable efforts to operate, promote and market the Club to maximize Gross Revenues; (iii) it has the financial resources, ability and experience to operate the Club in a manner likely to result in the Club achieving success; and (iv) it will not wilfully or knowingly operate the Club so as to violate any law, statute, ordinance, rule or regulation of any governmental body, local, state or federal, unless there is a bona fide dispute as to the violation or legality of such law, statute, ordinance, rule or regulation, and LICENSEE promptly resorts to courts or forums of appropriate jurisdiction to contest such violation or legality.

6.   Trademark Notices/Quality Control/Samples.

6.1   The License granted hereunder is conditioned upon LICENSEE's full and complete compliance with the notice provisions of the trademark laws of the United States.

4

06/22/2006 15:09 FAX 2483540836                                                    Ø006/013

6.2     The use of the Trademark in connection with the Club, as well as all promotional, and advertising material relative thereto, shall include all appropriate legal notices, as required by LICENSOR.

6.3     The Club shall be operated in a manner so as not to detract from the goodwill or quality associated with the Trademark and the use of the Trademark shall be in conformity with the samples submitted to and approved by LICENSOR, which approval shall not be unreasonably withheld.

6.4     Prior to the commencement of operations of the Club and continuing throughout the Term, LICENSEE shall submit to LICENSOR, at no cost to LICENSOR and for LICENSOR'S written approval as to quality, three (3) sets of samples of each use of the Trademark which LICENSEE intends to use in connection with the Club, including any logos or signs which include the Trademark and one (1) complete set of all promotional and advertising material associated therewith. Failure of LICENSOR to disapprove such samples within ten (10) business days after receipt thereof will be deemed approval. If LICENSOR should disapprove any sample, LICENSOR shall provide specific reasons for such disapproval. After samples have been approved by LICENSOR, LICENSEE shall not materially depart therefrom without LICENSOR's prior written approval.   Failure of LICENSOR to disapprove any modifications of samples previously approved by LICENSOR within ten (10) business days after receipt of such modifications will be deemed approval. If any sample submitted to LICENSOR is not approved LICENSEE shall not make any use whatsoever of such sample and if already used shall immediately cease all further use.

6.5     LICENSEE agrees to permit LICENSOR or its representatives to inspect the facilities of the Club at any reasonable time upon reasonable notice to LICENSEE during the Term.

7.     Notice.   Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be deemed to have been properly given hereunder: (a) upon personal delivery to the addresses set forth below, (b) upon receipt of such notice if sent by registered or certified mail, return receipt requested, postage prepaid in the United States Mail, (c) upon receipt of such notice if deposited in the custody of a nationally recognized overnight delivery service, or (d) upon receipt of such notice if sent by telecopy and receipt is confirmed.   Notice shall be addressed as follows (or to such other addresses as the parties may specify by due notice to the others):

To LICENSOR:          LFP Publishing Group, LLC
                      8484 Wilshire Blvd., 9th Floor
                      Beverly Hills, California 90211
                      Att: Larry Flynt
                      Telephone No.: (323) 651-5400
                      Facsimile No.: (323) 651-2936

5

06/22/2006 15:09 FAX  2483540896                                             @007/013

|  | |
|---|---|
| To LICENSEE: | c/o Modern Bookkeeping |
|  | 8252 E. Lansing Road, Suite 101 |
|  | Durand, Michigan 48429 |
|  | Telephone No.: (989) 288-2643 |
|  | Facsimile No.: (989) 288-6037 |

8.      **Intellectual Property Protection.**

8.1      LICENSOR shall obtain and, during the Term, maintain in its own name and at its own expense, appropriate intellectual property protection for the Trademark in connection with the Premises.

8.2      LICENSEE acknowledges LICENSOR's exclusive rights in the Trademark and further acknowledges that the Trademark is unique and original to LICENSOR and that LICENSOR is the owner thereof.  LICENSEE shall not, at any time during or after the Term, dispute or contest, directly or indirectly, LICENSOR's exclusive right and title to the Trademark or the validity of any trademark or copyright which may issue or be granted therefrom.  LICENSEE acknowledges that the Trademark has acquired secondary meaning.

8.3      LICENSEE agrees that LICENSEE's use of the Trademark inures to the benefit of LICENSOR and that the LICENSEE shall not acquire any rights in the Trademark.

9.      **Termination.**  The following termination rights are in addition to the termination rights provided elsewhere in the Agreement.

9.1      **Right of Termination.**  LICENSOR shall have the right to terminate this Agreement by giving written notice to LICENSEE in the event that LICENSEE:

9.1.1  after commencing operation of the Club, fails to operate the Club for four (4) consecutive months, unless the Club ceases operations as a result of a casualty or for remodeling or renovation or any similar reason and LICENSEE intends to operate the Club after the Premises have been restored, remodeled, renovated, etc. and begins to operate within one year (unless construction after a casualty cannot be completed within one year); or

9.1.2  files a petition in bankruptcy or is adjudicated a bankrupt or insolvent, or makes an assignment for the benefit of creditors or an arrangement pursuant to any bankruptcy law, or discontinues its business or a receiver is appointed for it or for its business and such receiver is not discharged within sixty (60) days; or

9.1.3  breaches any of the provisions of this Agreement relating to the unauthorized assertion of rights in the Trademark; or

6

06/22/2006 15:09 FAX  2483540898                                    @008/013

9.1.4  fails, after receipt of written notice from LICENSOR, to discontinue the use of any promotional or advertising material which does not contain the requisite trademark notices; or

9.1.5  fails to make payment of Royalties within thirty (30) days after such payment is due more than once during any twelve-month period; or

9.1.6  operates the Club in violation of any law, statute, ordinance, rule or regulation of any governmental body, local, state or federal, including, without limitation, any obscenity or liquor laws, etc., and permits the same to go uncorrected after notification thereof, unless there is a bona fide dispute as to the violation or legality of such law, statute, ordinance, rule or regulation, and LICENSEE promptly resorts to courts or forums of appropriate jurisdiction to contest such violation or legality.

9.2    **Termination for Breach.** This Agreement may be terminated by either party ("non-defaulting party") if the non-defaulting party gives written notice of a default by the other party ("defaulting party") and the defaulting party fails to cure such default within thirty (30) days after receipt of notice of such default from the non-defaulting party setting forth with specificity the nature of such default; provided, however, if such default cannot reasonably be cured within such thirty-day period and the defaulting party has commenced to cure such default within such thirty-day period and continues to diligently pursue the curing of such default, the defaulting party shall have such additional time, not to exceed sixty (60) days, as may be reasonably necessary to cure such default before the non-defaulting party can terminate this Agreement.

9.3    **Termination Based Upon Receipts.** LICENSOR shall have the right to terminate this Agreement if the amount of the Royalty due to LICENSOR hereunder during any Royalty Period which includes twelve (12) full calendar months is less than the sum of $40,000; provided that LICENSEE shall have the right to pay to LICENSOR the sum of $40,000 as the Royalty for any such Royalty Period and LICENSOR will not have the right to terminate this Agreement if LICENSEE pays LICENSOR the sum of $40,000 as a Royalty for any such Royalty Period.

9.4    **Effective Date of Termination.** Any termination of this Agreement by LICENSOR shall be effective six (6) months after the occurrence of the event which permits LICENSOR to terminate this Agreement and after all required notices have been given and all grace periods have passed.

10.    **Post Termination.** Upon the expiration or termination of this Agreement, all of the rights of LICENSEE under this Agreement to use the Trademark shall forthwith terminate and immediately revert to LICENSOR. All other rights of LICENSEE hereunder shall survive the termination of this Agreement, including, by way of illustration and not limitation, LICENSEE's indemnity rights hereunder.

7

06/22/2006 15:09 FAX  2483540896                                    @009/013

11.    Good Will.  LICENSEE recognizes the value of the good will associated with the Trademark and acknowledges that the Trademark and all rights therein, including the good will pertaining thereto, are the sole and exclusive property of LICENSOR.

12.    Infringements.

12.1    LICENSOR shall have the right, in its discretion, to institute and prosecute lawsuits against third parties for infringement of the rights licensed in this Agreement.  If LICENSOR does not institute and prosecute lawsuits against third parties for infringement of the rights licensed to LICENSEE in this Agreement, then LICENSEE shall have the right to institute and prosecute lawsuits against such third parties for infringement of such rights in the name of LICENSEE or in the name of LICENSOR, at the sole cost of LICENSEE; and LICENSOR shall fully cooperate with LICENSEE in any such lawsuit.

12.2    Upon request of LICENSOR, LICENSEE shall execute all papers, testify on all matters, and otherwise cooperate in every way necessary and desirable for the prosecution of any such lawsuit.  LICENSOR shall reimburse LICENSEE for the reasonable expenses incurred as a result of such cooperation; and LICENSOR shall defend, indemnify, and hold LICENSEE harmless against and in respect of all actions, judgments, costs and expenses arising out of or resulting from LICENSEE's execution of papers, testimony or other cooperation relating to the prosecution of any such lawsuit.

13.    Indemnity.

13.1    LICENSEE agrees to defend and indemnify LICENSOR, LICENSOR's officers, directors, agents and employees, against all costs, expenses and losses (including attorneys' fees and costs) incurred as a result of claims of third parties against LICENSOR based on or resulting from a breach of this Agreement by LICENSEE, including, without limitation, the violation of any law, ordinance, rule or regulation of any governmental body by LICENSEE in the operation of the Club. LICENSOR acknowledges that "Affiliates", as defined in Rule 12-b of the Regulations promulgated pursuant to the Securities Exchange Act of 1934, of Imagination Corporation, a Michigan corporation, and/or Dynamic Industries, Ltd., a Delaware corporation ("Deja Vu Affiliates"), are engaged in lawsuits and administrative and other proceedings (collectively "Lawsuits") with governmental units and agencies and individuals and classes of individuals (including class actions) concerning the classification of individuals performing at Adult Entertainment Businesses (as hereinafter defined) owned and/or operated by Deja Vu Affiliates as employees or independent contractors or lessees.  The term "Adult Entertainment Businesses" as used in this Agreement shall mean (i) adult nightclubs featuring live nude and/or semi-nude entertainment, and/or (ii) adult bookstores, and/or (iii) adult arcades featuring live and/or prerecorded nude and/or semi-nude entertainment.

8

08/22/2006 15:09 FAX  2483540896                                                    ☒ 010/013

13.2   LICENSOR agrees to defend and indemnify LICENSEE, LICENSEE's officers, directors, members, managers, Affiliates, agents and employees, against all costs, expenses and losses (including attorneys' fees and costs) incurred a as result of claims of third parties against LICENSEE, based on or resulting from a breach of this Agreement by LICENSOR.

13.3   LICENSOR agrees to defend and indemnify LICENSEE and LICENSEE's officers, directors, members, managers, shareholders, agents, and employees from and against any and all costs, expenses and losses (including attorneys' fees and costs) incurred as a result of or related to claims of third parties involving use of the Trademark as authorized hereunder.

14.   **Insurance.**   LICENSEE shall obtain and maintain throughout the Term, at LICENSEE's cost and expense, public liability and property damage insurance insuring the Club and naming LICENSOR as an additional named insured. Such policy shall provide protection against fire, bodily injury, property damage and worker's compensation coverage. The amount of coverage shall be as specified in Schedule A. The policy(ies) shall provide for ten (10) days written notice to LICENSOR from the insurer by registered or certified mail, return receipt requested, in the event of any modification, cancellation or termination thereof. LICENSEE agrees to furnish to LICENSOR a certificate of insurance evidencing the foregoing insurance coverage within thirty (30) days after the date hereof and, in no event, shall LICENSEE open or operate the Club prior to receipt by LICENSOR of such certificate of insurance.

15.   **Advertisement.**   Each month that the Trademark is licensed to LICENSEE or an Affiliate of LICENSEE or an Affiliate of Imagination Corporation or an Affiliate of the Durand Trust (all such licensees of the Trademark, including future licensees of the Trademark which are Affiliates of LICENSEE or of Imagination Corporation or of the Durand Trust, are collectively the "H.D.V. Licensees"), LICENSOR shall either (a) provide the H.D.V. Licensees with one-half of a page of free advertisement (supplied to LICENSOR by LICENSEE and approved by LICENSOR, which approval shall not be unreasonably withheld or delayed) in the "Hustler" magazine, or (b) feature the Club or another club or clubs owned and operated by one or more H.D.V. Licensees in a review or promotion of Hustler Clubs. The free advertisement or feature or review may include the Club and/or all or any other Hustler clubs owned and/or operated by H.D.V. Licensees.

16.   **Force Majeure.**   In the event of an act of the government, war, fire, flood or labor stoppages in any factory manufacturing parts necessary for the manufacture of the Licensed Products, which prevents the performance by LICENSEE of its obligations hereunder, then such nonperformance by LICENSEE shall not be considered a breach of this Agreement and such nonperformance shall be excused while the foregoing conditions prevail.

17.    **Governing Law.** This Agreement shall be governed by the laws of the State of California applicable to contracts executed and wholly performed therein.

18.    **Agreement Binding on Successors.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their successors and assigns.

19.    **Waiver.** No waiver by either party of any default shall be deemed to be a waiver of prior or subsequent defaults of the same or other provisions of this Agreement.

20.    **Severability.** If any term, clause or provision hereof shall be found invalid or unenforceable by a court of competent jurisdiction, such decision shall not affect the validity or enforceability of any other term, clause or provision and such invalid term, clause or provision shall be deemed to be severed from the Agreement.

21.    **No Joint Venture.** Nothing contained herein shall constitute a joint venture or a partnership between LICENSOR and LICENSEE.

22.    **Entire Agreement.** Each party acknowledges that no representation or warranty not expressly set forth in this Agreement has been made to the other party and that this Agreement constitutes the entire understanding of the parties and supersedes all prior agreements between the parties relating to the subject matter hereof and is intended as a final expression of their agreement. This Agreement shall not be modified or amended except in writing signed by both parties.

23.    **Affiliate.** As used in this License Agreement, the term "Affiliate" means a person or entity which, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, another person or entity, or is an officer, director, trustee, member, manager, stockholder (of more than five percent) or partner in such entity. As used in the definition of "Affiliate," the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person or entity, whether through the ownership of an equity interest by contract, or otherwise.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

LICENSOR

LFP PUBLISHING GROUP, LLC,
a Delaware limited liability company

By:  _____
Larry Flynt
Its CEO

10

LICENSEE

PACERS, INC.,
a California corporation

By: *Jason Mohney*

Jason Mohney
Its President

C:\Documents and Settings\HBrown\Local Settings\Temporary Internet Files\OLK4\License Agreement - Pacers.wpd

11

06/22/2006 15:10 FAX  2483540898                                    ☑013/013

## SCHEDULE A

1.      **Licensed Trademark.**

The licensed Trademark is: Hustler, including any and all logos used in connection with the Trademark Hustler.

2.      **Licensed Use.**

For and in consideration with the entertainment club owned and operated by LICENSEE at the Premises (the "Club"), including use as the name or part of the name of the Club and in the advertising and promotion of the Club.  For the purposes hereof, Club shall mean establishments that are open to the public, charge an entrance fee and provide adult entertainment in the form of strip dances and private dances for the patrons and which serve beverages.

3.      **Premises.**

3334-3336 Midway, San Diego, California

4.      **Term.**

This Agreement shall commence on the date LICENSEE begins to operate the Club using the trademark "Hustler", and shall continue for a period of seven (7) years (the "Term").

5.      **Insurance.**

LICENSEE shall obtain liability insurance in the amount of One Million Dollars ($1,000,000.00) combined single limit for each single occurrence for bodily injury and Five Hundred Thousand Dollars ($500,000.00) for property damage, with a deductible not to exceed Twenty-Five Thousand Dollars ($25,000.00).

F:\OBREL\Clients\Deja Vu\License Agreement - Pacers.wpd

# EXHIBIT B

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | Southern District of California | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: Pacers, Inc. | Case Number: 09-12738-A11 |
|---|---|

**NOTE:** *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property): LFP Publishing Group, LLC | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent: LFP Publishing Group, LLC, c/o Michael Klein, 8484 Wilshire Blvd., Beverly Hills, CA 90211 | Court Claim Number: _____ (If known) |
| Telephone number: (323) 651-5400 | FILED ENTERED LODGED RECEIVED | Filed on: _____ |
| Name and address where payment should be sent (if different from above): | JAN 0 6 2010 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| Telephone number: | CLERK, U.S. BANKRUPTCY COURT SOUTHERN DISTRICT OF CALIFORNIA BY ___ DEPUTY | ☐ Check this box if you are the debtor or trustee in this case. |

| 1. **Amount of Claim as of Date Case Filed:** $ 43,402.35 | 5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

Specify the priority of the claim.

2. **Basis for Claim:** Royalty Payments
(See instruction #2 on reverse side.)

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

3. **Last four digits of any number by which creditor identifies debtor:** PACIN

3a. **Debtor may have scheduled account as:** LFP Productions
(See instruction #3a on reverse side.)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

4. **Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

**Value of Property:** $_____  **Annual Interest Rate___%**

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any:** $_____  **Basis for perfection:** _____

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

**Amount of Secured Claim:** $_____  **Amount Unsecured:** $_____

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

**Amount entitled to priority:**

$_____

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 1/5/10 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. *Robert Gaddis Chief Financial Officer* | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# LFP PUBLISHING GROUP, LLC

**INVOICE**

8484 Wilshire Blvd, Ste 900
Beverly Hills, CA 90211
Attn: Credit Dept.

Invoice ID : 0912PACE3Q
Sales Order ID : S0912PACE3Q
Invoice Date : 12/9/2009
Ship Date : 12/9/2009 11:27:01 AM
Customer PO ID :

| Due Date | Amount | AR Terms: | |
|---|---|---|---|
| 1/8/2010 | $8,494.35 | Net 30 | Page Number : Page 1 of 1 |

| Bill To : | PACERS | Ship To : |
|---|---|---|
| PACERS INCORPORATED | | PACERS INCORPORATED |
| 3334-3336 MIDWAY DR | | 3334-3336 MIDWAY DR |
| SAN DIEGO, CA 92110 | | SAN DIEGO, CA 92110 |

| Order Date: | 12/9/2009 11:27:01 AM | FOB: | Beverly Hills |
|---|---|---|---|
| Currency Type : | USD | Ship Method: | US Mail |

| Line Nbr/ | Item ID / Item Name | Shipped Qty | Unit Price | Extended Price |
|---|---|---|---|---|
| 1 | / 3RD QUARTER CLUB TM ROYALTY FOR 7/1/09-8/27/09 | 1 | $8,494.35 | $8,494.35 |

Special Inst:

| | |
|---|---|
| **Subtotal:** | **$8,494.35** |
| **Total:** | **$8,494.35** |

# LFP PUBLISHING GROUP, LLC

**INVOICE**

8484 Wilshire Blvd, Ste 900
Beverly Hills, CA 90211
Attn: Credit Dept.

Invoice ID : 0912PACE
Sales Order ID : S0912PACE
Invoice Date : 12/9/2009
Ship Date : 12/9/2009 11:08:32 AM
Customer PO ID :

| Due Date | Amount | AR Terms: |
|---|---|---|
| 1/8/2010 | $34,908.00 | Net 30 |

Page Number : Page 1 of 2

| Bill To : | PACERS | Ship To : |
|---|---|---|
| PACERS INCORPORATED<br>3334-3336 MIDWAY DR<br>SAN DIEGO, CA 92110 | | PACERS INCORPORATED<br>3334-3336 MIDWAY DR<br>SAN DIEGO, CA 92110 |

| Order Date: | 12/9/2009 11:08:32 AM | FOB: | Beverly Hills |
|---|---|---|---|
| Currency Type : | USD | Ship Method: | US Mail |

| Line Nbr/ | Item ID / Item Name | Shipped Qty | Unit Price | Extended Price |
|---|---|---|---|---|
| 1 | / IMPACT OF ATM FEES NOT REPORTED FOR EACH YEAR: | | | |
| 2 | / YTD 8/27/09 ROYALTY | 1 | $5,964.00 | $5,964.00 |
| 3 | / YTD 8/27/09 INTEREST | 1 | $216.00 | $216.00 |
| 4 | / 2008 ROYALTY | 1 | $8,031.00 | $8,031.00 |
| 5 | / 2008 INTEREST | 1 | $1,041.00 | $1,041.00 |
| 6 | / 2007 ROYALTY | 1 | $7,785.00 | $7,785.00 |
| 7 | / 2007 INTEREST | 1 | $1,923.00 | $1,923.00 |
| 8 | / 2006 ROYALTY | 1 | $7,227.00 | $7,227.00 |
| 9 | / 2006 INTEREST | 1 | $2,721.00 | $2,721.00 |

# LFP PUBLISHING GROUP, LLC

**INVOICE**

8484 Wilshire Blvd, Ste 900
Beverly Hills, CA 90211
Attn: Credit Dept.

Invoice ID : 0912PACE
Sales Order ID : S0912PACE
Invoice Date : 12/9/2009
Ship Date : 12/9/2009 11:08:32 AM
Customer PO ID :

| Due Date | Amount | AR Terms: | | |
|---|---|---|---|---|
| 1/8/2010 | $34,908.00 | Net 30 | | Page Number : Page 2 of 2 |

**Bill To :**     PACERS

PACERS INCORPORATED
3334-3336 MIDWAY DR
SAN DIEGO, CA 92110

**Ship To :**

PACERS INCORPORATED
3334-3336 MIDWAY DR
SAN DIEGO, CA 92110

| Order Date: | 12/9/2009 11:08:32 AM | FOB: | Beverly Hills |
|---|---|---|---|
| Currency Type : | USD | Ship Method: | US Mail |

| Line Nbr/ Item ID / Item Name | Shipped Qty | Unit Price | Extended Price |
|---|---|---|---|

Special Inst:

| | | |
|---|---|---|
| **Subtotal:** | | $34,908.00 |
| **Total:** | | $34,908.00 |

# EXHIBIT C

CSD 1001A [11/15/04]
Name, Address, Telephone No. & I.D. No.
Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
155 Montgomery Street, Suite 1004
San Francisco, California 94104
415) 391-7566 Telephone
Attorneys for Jason Mohney and San Diego Fantasy, LLC

Order Entered on
June 08, 2010
by Clerk U.S. Bankruptcy Court
Southern District of California

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

PACERS, INC.

Debtor.

BANKRUPTCY NO.  09-12738-LA11

Date of Hearing: May 27, 2010
Time of Hearing: 10:30 a.m.
Name of Judge: Hon. Louise D. Adler

AMENDED          ALTERNATE   **ORDER ON**

## SALE OF DEBTOR'S BUSINESS

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through __10__ with exhibits, if any, for a total of __38__ pages, is granted.  Motion/Application Docket Entry No. __253__

//

//

//

//

//

//

DATED:  June 08, 2010

_Louise DeCarl Adler_
Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:

ST. JAMES LAW, P.C.
(Firm name)

By: Michael St. James
Attorney for ☐ Movant ☑ Respondent

CSD 1001A

CSD 1001A [11/15/04] (Page 2)   Case 09-12738-LA11   Filed 06/08/10   Doc 328   Pg. 2 of 38

ORDER ON MOTION BY TRUSTEE FOR ORDER (1) APPROVING THE SALE OF DEBTOR'S BUSINESS ASSETS; (2) APPROVING
ASSUMPTION AND ASSIGNMENT OF LEASES AND EXECUTORY CONTRACTS; AND (3) APPROVING BIDDING PROCEDURES
DEBTOR: PACERS, INC.                                        CASE NO: 09-12738-LA11

The Motion by Trustee for Order (1) Approving the Sale of Debtor's Business Assets; (2) Approving

Assumption and Assignment of Leases and Executory Contracts; and (3) Approving Bidding Procedures

(hereafter "the Motion"), came on for hearing ("Hearing") before the Honorable Louise DeCarl Adler, United

States Bankruptcy Judge, on May 27, 2010 at 10:30 a.m. in the above-entitled Court. Michael D. Breslauer, Esq.

of Solomon, Ward, Seidenwurm & Smith, LLP appeared on behalf of Pacers, Inc. ("Debtor"). Robert R.

Barnes, Esq. of Allen Matkins Leck Gamble Mallory and Natsis, LLP appeared on behalf of Tollis, Inc.

("Tollis" or "Lessor"). Lisa Torres, Esq. of the Law Offices of William P. Fennell, appeared on behalf of the

Official Committee of Unsecured Creditors ("OCC"). Gary E. Slater, Esq. of Slater & Truxaw, LLP appeared

on behalf of Leslie T. Gladstone, Chapter 11 Trustee ("Trustee"). The Trustee was also personally present.

Ernest Franceschi, Esq. appeared on behalf of Abner Pajounia ("Pajounia"), Edmond Adaimy ("Adaimy"), Peter

Z. Balov ("Balov"), Steven R. Bitter ("Bitter") and Midway Venture, LLC, who comprised and were determined

by the Court to be the Successful Bidder as defined in the Motion. Jason Mohney and/or San Diego Fantasy,

LLC appeared on behalf of themselves and were determined by the Court to be the First Back-Up Bidder as

defined in the Motion.  Other appearances are reflected in the Minute Order of the Court (Docket No. 307).

The Court having reviewed and considered (i) the Motion, (ii) the objections or responses thereto filed

by Tollis and the OCC (iii) the Declarations of the Trustee and of Gary E. Slater, filed in support of the Motion,

(iv) the arguments of counsel made, and the evidence proffered or adduced, at the hearing on the Motion (the

"Hearing")  and (v) the record of this entire chapter 11 case; and it appearing that the relief requested in the

Trustee's Motion is in the best interests of the bankruptcy estate, its creditors, and other parties-in-interest

(hereafter, collectively "Estate"); and after due deliberation thereon; and good cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.     On August 27, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under

Chapter 11 of Title 11, United States Code (the "Bankruptcy Code").

B.     The Trustee's appointment was confirmed by Order of this Court on March 19, 2010 (Docket No.

CSD 1001A

*Signed by Judge Louise DeCarl Adler June 08, 2010*