**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. SACV 10-01546 DOC (MLGx)            Date: October 18, 2010

Title: LFP IP, LLC et. al. v. MIDWAY VENTURE, LLC et. al.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Kathy Peterson | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                           NONE PRESENT

PROCEEDING (IN CHAMBERS): GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

       Before the Court is an *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction filed by Plaintiffs LFP IP LLC, LFP Publishing Group LLC and Larry C. Flynt (collectively, "Plaintiffs") in the above-captioned case ("Application") (Docket 5). For the reasons set forth below, the Court hereby GRANTS Plaintiffs' Application.

     **I.**      **BACKGROUND**

       In or about April 2006, Plaintiff LFP Publishing Group, LLC ("LFP Publishing") alleges that it entered into a written license agreement with non-party Pacers, Inc. ("Pacers"). Through the agreement, LFP Publishing granted Pacers a license to market and operate an adult night club located at 3310, 3314, 3334 and 3336 Midway Drive, San Diego, California as a "Hustler Club" ("San Diego Night Club"). Decl. of M. Klein, ¶ 9.

       On or about August 27, 2009, Pacers filed for bankruptcy. *In re Pacers Inc.*, Case No. 09-12378-LA11. By an Order dated June 8, 2010, the Bankruptcy Court approved the sale of certain Pacers business assets, pursuant to a written Agreement for Purchase and Sale of Certain Assets ("Purchase Agreement"). Among the assets sold pursuant to the Purchase Agreement was the San Diego Night Club.

According to Plaintiffs, the Purchase Agreement specifically excludes the sale of any right of continued use of the "Hustler," "Hustler Club," or "Larry Flynt" trademarks in connection with the operation of the San Diego Night Club.  Plaintiffs point specifically to Recital D of the Purchase Agreement.  Recital D references "certain business names, trademarks and/or promotional materials ... certain branded merchandise ... and/or ... other licensed names materials products and/or services ... including but not limited to agreements with LFP Publishing Group" that Pacer either had used in the past or was presently using.  Recital D then provides :

> "Notwithstanding any such past or present uses of and/or business attributes arising out of such IP licenses ... Buyer acknowledges and agrees that Buyer will not receive any rights or interests respecting such IP licenses ... and Buyer agrees that, from and after Closing as provided herein, Buyer will remove all licensed material and products from the premises and cease using the same..."

In addition, Plaintiffs point to Section 1.1 D of the Purchase Agreement, which states that "[n]otwithstanding anything to the contrary, Seller will not convey to Buyer any interest in the IP Licenses."

Defendant purchased the San Diego Night Club pursuant to the Purchase Agreement.  Closing occurred on September 20, 2010.

Plaintiffs allege that, in violation of the clear language of the Purchase Agreement, Defendants have continued to operate the San Diego Night Club as a "Larry Flynt Hustler Club," refusing to remove any of Plaintiffs' marks from the property.  Plaintiffs contend that they sent Defendants two cease and desist letters, on dated September 22, 2010 and the other dated October 11, 2010, but that Defendants have taken no action to cease and desist their infringing activities.

As a result of the above-described events, Plaintiffs filed the instant Application.

## II.   LEGAL STANDARD

The legal analysis applicable to requests for a temporary restraining order ("TRO") is "substantially identical" to the analysis employed in requests for a preliminary injunction.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  Thus, in order to qualify for a TRO, the moving party must "demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council*, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)).  Alternatively, Courts have discretion to grant TRO's where "a plaintiff demonstrates ... that serious questions going to the merits were raised and the balance of hardships tips strongly in plaintiff's favor."  *Alliance for Wild Rockies v. Cottrell, - - F.3d - - -,* 2010 WL 2926463 at *7 (9th Cir. 2010)

### III. DISCUSSION

### Ex Parte Relief

Plaintiffs justify their request for *ex parte* relief on the grounds that the irreparable injury incurred from Defendants' actions means that there is insufficient time for Plaintiffs to proceed according to a regularly noticed motion schedule. Given the circumstances of this case, the Court finds *ex parte* relief appropriate.

### Notice to Defendants

Plaintiffs state that they are unaware of a California attorney representing all of the Defendants. Plaintiffs are, however, aware that Defendant Midway is represented by Ernest J. Francheschi, Jr. Plaintiffs served a copy of this Application on Ernest J. Francheschi. Plaintiffs' counsel has certified his efforts in writing, in compliance with Fed. R. Civ. P. 65(b)(2). *See* Decl. of J. Brown.

### Issuance of a TRO

### Likelihood of Success on the Merits

Plaintiffs' Application demonstrates a likelihood of success on the merits of at least one of Plaintiffs' substantive claims. In order to succeed on a claim for trademark infringement, a plaintiff must establish (1) that he or she possesses a protectable interest in a trademark, and (2) that the defendant has unlawfully infringed that interest. *Department of Parks v. Bazaar Del Mundo*, 448 F.3d 1118, 1124 (9th Cir. 2006).

Regarding the first factor, the Lanham Act protects both registered and unregistered trademarks. *Two Pesos Inc. v. Taco Cabana Inc,*, 505 U.S. 763, 768 (1992); *Halicki Films LLC v. Sanderson Sales and Marketing*, 547 F.3d 1213, 1225-26 (9th Cir. 2008). Moreover, a plaintiff can acquire trademark rights in his or her surname in instances where that surname has acquired a secondary meaning to the public. *See Miller v. Glen Miller Productions,* 318 F. Supp. 2d 923, 936 (C.D. Cal. 2004) (citing J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §13.2 (4th ed.)); *Paul Frank Industries Inc. v. Sunsch*, 502 F. Supp. 2d 1094 (C.D. Cal. 2007). Here, Plaintiffs state that the trademarks "Hustler" and "Hustler Clubs" are registered with the United States Patent and Trademark Office for use in connection with adult night clubs. Compl., ¶¶ 17-18. Moreover, through his various "LFP" (originally Larry Flynt Production) companies, Plaintiff Flynt has used the Larry Flynt name and common law mark in connection with various goods and services, including adult nightclubs. *Id.*, ¶ 23. Plaintiff Flynt was also the principal subject of a popular motion picture entitled "The People vs. Larry Flynt." *Id.*, ¶ 24. As such, it appears likely that Plaintiff Flynt's name and common law mark has acquired secondary meaning to the public, affording the name and

mark a right to trademark protection.

Plaintiffs also appear likely to succeed in establishing the second required element of a trademark infringement claim: that defendant unlawfully infringed a protectable trademark interest. "The core element of trademark infringement is whether customers are likely to be confused about the source or sponsorship of the products." *Reno Air Racing Ass'n , Inc. V. McCord*, 452 F.3d 1126 (9th Cir. 2006). In *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979), the Ninth Circuit provided a suggested list of factors to consider when evaluating instances of consumer confusion. These factors include: (1) the strength of the mark, (2) proximity or relatedness of the goods or services, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) the degree of care customers are likely to exercise, (7) defendant's intent in selecting the mark, and (8) the likelihood of expansion of the product lines. *Id.* The Ninth Circuit has clarified that the *Sleekcraft* factors are to be used simply as a roadmap – the absence of one factor does not necessarily preclude a finding of confusion. *E&J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290-91 (9th Cir. 1992).

In this case, the first three *Sleekcraft* factors seem to clearly favor Plaintiffs. Regarding the strength of the mark, Plaintiffs have successfully used the "Hustler" and "Larry Flynt" marks for decades. Plaintiff Flynt was even the subject of a popular motion picture, bearing his name, that depicted Plaintiff in activities related to adult night clubs. The second factor – the proximity or relatedness of the goods or services – also weighs heavily in favor of Plaintiffs. Indeed, by operating an adult night club, Defendants offer a service/product identical to that offered by Plaintiffs. The third *Sleekcraft* factor focuses on the similarity of the marks used by Plaintiffs and Defendants. In this case, Defendants seek continued use of the marks that Plaintiffs previously authorized for use by Pacer. In other words, Defendants seek to use Plaintiffs' marks in a manner identical to that of authorized licensees.

The fifth, sixth and seventh *Sleekcraft* factors also appear favorable to Plaintiffs' position. With respect to the fifth factor – a comparison of the marketing channels used – it accords with common sense to assume that the marketing channels used to promote Defendants' adult night club would parallel those employed by Plaintiffs. Regarding the sixth factor – the degree of care customers are likely to exercise – it seems similarly intuitive to imagine that patrons of adult night clubs are not likely to exercise a high degree of care when selecting their product. It is reasonable to believe that an adult night club patron would base his or her patronage largely on the name of the club. Finally, the seventh factor focuses on the defendant's intent in selecting the mark. In all likelihood, Defendants decision to use Plaintiffs' marks arose from a desire to capitalize on Plaintiffs' popularity and recognition with consumers.

The effect of the fourth and ninth factors on Plaintiffs' infringement claim is equivocal. On the whole, however, analysis of the *Sleekcroft* appears to favor Plaintiffs. Plaintiffs thus appear

likely to succeed on their trademark infringement claims.[1]

### Irreparable Harm

In a trademark infringement case, irreparable injury may be presumed from a showing of likelihood of success on the merits. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 1999) (citing *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1038 (9th Cir.2003)). Such a presumption appears warranted in this case. Continued unauthorized use of Plaintiffs' trademarks risks confusing customers who patronize the San Diego Night Club. These customers may be led to mistakenly believe that their experiences at that club have been endorsed by Plaintiffs. Any difference in the quality of product or services offered at the San Diego Night Club risks irreparable injury to Plaintiffs' reputation and a potential loss of consumer good will. Any such depreciation of consumer good will would prove difficult to measure after trial and thus difficult to redress through compensation. Courts thus often hold that such intangible injuries qualify as irreparable harm. *See Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2D 597, 603 (9th Cir. 1991).

### Balance of Hardships

The balance of hardships analysis also militates in favor of granting Plaintiffs' Application. Plaintiffs have demonstrated that they would suffer irreparable harm in the absence of injunctive relief. Namely, they risk continued damage to their reputation and a potential loss of consumer good will. By contrast, issuance of a TRO will not impose an undue burden on Defendants. Defendants may continue to operate the San Diego Night Club. They must simply remove all signage related to the "Hustler," "Hustler Club," and "Larry Flynt" marks and cease to advertise the San Diego Night Club as a "Huster," "Hustler Club" or "Larry Flynt" establishment. While removing signage may impose some difficulties on Defendants, on the whole, the issuance of a TRO will not result in undue hardship. The balance of hardships weighs in favor of Plaintiffs.

### Public Interest

Issuing a TRO accords with the public interest. Preventing consumer confusion serves the public. *Flynt v. Flynt Media Corp.,* 2009 WL 125839, at *1 (C.D. Cal. 2009); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000) ("...the public interest is served by the

---

[1] In their Application, Plaintiffs contend that, in addition to being likely to succeed on the merits of their trademark infringement claims, Plaintiffs are also likely to succeed on their claims of unfair competition and trademark dilution. Because the Court agrees that Plaintiffs have demonstrated a likelihood of success on the merits of their infringement claim, the Court need not reach the arguments advanced with respect to Plaintiffs' unfair competition and trademark dilution claims.

injunction because enforcement of the trademark laws prevents consumer confusion."). Here, requiring Defendants to remove all references to "Hustler," "Hustler Club" and/or "Larry Flynt" ensures that consumers will not be misled into believing that the San Diego Night Club is connected to Plaintiffs.

Accordingly, all relevant factors weigh in favor of granting Plaintiff's Application.

## VI.   DISPOSITION

For the reasons set forth above, Plaintiffs' Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction is GRANTED.

Effective immediately, Defendants are hereby RESTRAINED from advertising or promoting night clubs or other goods or services bearing the "Larry Flynt," "Hustler," or "Hustler Clubs" marks, and passing off such goods and services as those of Plaintiffs.

Defendants are further ORDERED TO SHOW CAUSE on October 29, 2010 at 8:30 am why a Preliminary Injunction should not issue, enjoining Defendants from advertising or promoting night clubs or other goods or services bearing the "Larry Flynt," "Hustler," or "Hustler Clubs" marks, and passing off such goods and services as those of Plaintiffs. This Order must be served on Defendant no later than 5pm on October 20, 2010. Any response or opposition to the Order to Show Cause must be filed no later than October 25, 2010 at 8:00 am. Any reply shall be filed no later than October 27, 2010 at 5pm.

It is further ORDERED that within one day of the service of this Order, Plaintiff shall post a security bond, cash or certified attorney's check, in the amount of $15,000, as security, as a condition of the further force of this Order.

The Clerk shall serve this minute order on all parties to the action.